Amalgamated Casualty Insurance Company
PO Box 15033
Worcester, MA 01615

Legynd Transportation
PO BOX 892
Newport News, VA 23607



**AMALGAMATED**
CASUALTY INSURANCE CO.
· EST. 1938 ·

## COMMERCIAL AUTOMOBILE DECLARATIONS SUMMARY

| | |
|---|---|
| 1 | IL 12 01 GEN (11 85) - POLICY CHANGES - GENERAL CHANGES |
| 2 | COMMERCIAL DECLARATIONS SUMMARY (07 14) - COMMERCIAL DECLARATIONS SUMMARY |
| 3 | IL DS 00 (07 02) - COMMON POLICY DECLARATIONS |
| 4 | ACIC COV02 (3/20/2018) - COVER NOTICE |
| 5 | CA DS 22 (03 06) - VIRGINIA BUSINESS AUTO DECLARATIONS |
| 6 | CA 00 01 (03 06) - BUSINESS AUTO COVERAGE FORM |
| 7 | ACIC ENDLIST02 (2015/01/29) - COMMERCIAL AUTO DECLARATIONS FORMS, ENDORSEMENTS & SCHEDULES |
| 8 | CA 01 16 (04 15) - VIRGINIA CHANGES - BUSINESS AUTO COVERAGE FORM |
| 9 | CA 02 68 (01 13) - VIRGINIA CHANGES IN POLICY - CANCELLATION AND NONRENEWAL |
| 10 | CA 20 18 (12 93) - PROFESSIONAL SERVICES NOT COVERED |
| 11 | IL 00 21 (0392) - BROAD FORM NUCLEAR EXCLUSION |
| 12 | IL 00 21 (07 02) - NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| 13 | CA 21 21 (11 02) - UNINSURED MOTORISTS ENDORSEMENT (VIRGINIA) |
| 14 | IL 12 01 (11 85) - POLICY CHANGES |
| 15 | IL 00 03 (07 02) - Calculation Of Premium |
| 16 | IL 00 17 (11 98) - Common Policy Conditions |
| 17 | ACIC CHANGES01 (0216) - POLICY CHANGES |

# COMMON POLICY DECLARATIONS

| COMPANY | PRODUCER |
|---|---|
| Amalgamated Casualty Insurance Company<br>PO Box 15033<br>Worcester, MA 01615 | The Hilb Group Of New Jersey, LLC, A Subsidiary Of The Hilb<br>One International Blvd., Ste. #405 |

| | |
|---|---|
| **NAMED INSURED:** | Legynd Transportation |
| **MAILING ADDRESS:** | PO BOX 892<br> Newport News, VA 23607 |
| **POLICY PERIOD:** | FROM 10/12/2021 TO 10/12/2022 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE. |
| **BUSINESS DESCRIPTION** | |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART<br>CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART<br>COMMERCIAL AUTOMOBILE COVERAGE PART<br>COMMERCIAL GENERAL LIABILITY COVERAGE PART<br>COMMERCIAL INLAND MARINE COVERAGE PART<br>COMMERCIAL PROPERTY COVERAGE PART<br>CRIME AND FIDELITY COVERAGE PART<br>EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART<br>FARM COVERAGE PART<br>LIQUOR LIABILITY COVERAGE PART<br>POLLUTION LIABILITY COVERAGE PART<br>PROFESSIONAL LIABILITY COVERAGE PART | **$13,302.00** |
| TOTAL | **$13,302.00** |
| Premium shown is payable:          $              at inception.  $ | |

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| COMMERCIAL DECLARATIONS SUMMARY (07 14), IL DS 00 (07 02), IL 12 01 GEN (11 85), ACIC COV02 (3/20/2018), CA DS 22 (03 06), CA 00 01 (03 06), ACIC ENDLIST02 (2015/01/29), CA 01 16 (04 15), CA 02 68 (01 13), CA 20 18 (12 93), IL 00 21 (0392), IL 00 21 (07 02), CA 21 21 (11 02), IL 12 01 (11 85), IL 00 03 (07 02), IL 00 17 (11 98), ACIC CHANGES01 (0216) |

| Countersigned: | 4/25/2022 | By: | _Ed Arovas_ |
|---|---|---|---|
| | (Date) | | (Authorized Representative) |

NOTE

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE
COMPANY'S OPTION.

    © ISO Properties, Inc., 2001     IL DS 00 07 02

# POLICY CHANGES

| | Policy Change Number | **9** |
|---|---|---|

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CAP-21-0108491-03 | 4/25/2022 | Amalgamated Casualty Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Legynd Transportation | |

| COVERAGE PARTS AFFECTED |
|---|
| Business Auto Coverage |

| CHANGES |
|---|
| Delete - Auto: 2006 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FAHP71W76X108805 |
| Delete - Auto: 2010 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FABP7BV4AX112623 |
| Delete - Auto: 2010 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FABP7BV9AX139879 |
| Delete - Auto: 2013 |

_Ed Arovas_
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

IL 12 01 11 85



Dear Policyholder:

We are pleased to enclose your commercial auto insurance policy.

Your liability insurance coverage provides protection for damage or injuries to others caused by you. Since each person you allow to drive the vehicle should be named on your policy, you should contact your agent with the name of any additional person you want to drive your vehicle.

If you also purchased physical damage insurance coverage, as shown on your declarations page, protection would be included for damage to your own vehicle.

Liablity insurance coverage alone does not provide reimbursement for damage to your own vehicle.  If you have not purchased, but would like coverage for your own vehicle, please ask your agent for physical damage coverage.

In the event of an accident:

1)   Write down the names, addresses, and telephone numbers of the other driver, passengers, and witnesses.

2)   Note the date, time and place of the accident.

3)   Do not admit fault for the accident.

4)   If a police report is made, get the police report number, the police officer's name, badge number, and the precinct where the officer works.

5)   Report any and all accidents to the insurance company immediately.  You can report the accident by telephone via our toll-free claims line at 1-844-4TIC365 (1-844-484-2365).  When reporting the accident, please have available your policy number, driver's license, commercial driver's license and registration card for the vehicle you were driving at the time of the accident.  Please be cooperative when giving your report to the claims adjuster.  Through cooperation, we will be better able to serve you.

It is our pleasure to serve you.

If you have any questions, please contact your agent.



**EXPLANATION OF POLICYHOLDERS' RIGHTS**

As a policyholder, you have certain rights which are associated with your insurance policy issued by Amalgamated Casualty Insurance Company ("the Company"). The following is a description of those rights:

1. Policyholders have the right to reasonable underwriting.

2. Policyholders have the right to reasonable premiums.

3. Policyholders have the right to notice of change in the premium.

4. Policyholders have the right to have valid claims paid.

5. Policyholders have the right to counsel to defend a suit arising out of a covered accident.

6. Policyholders have the right to reimbursement for expenses incurred at the Company's request.

7. Policyholders are entitled to notice of policyholders meetings.

8. Policyholders elect the trustees to the Board.

9. Policyholders have the right to vote at the meetings of the Policyholders.

10. Policyholders have the right to the names of all the candidates for election to the Board upon written notice to the Secretary of the Company.

11. Each Policyholder shall have one vote, regardless of the number of policies.

12. Policyholders shall be members of the Company.

13. Policyholders have the right to a dividend, if declared.

14. Policyholders do not have to provide a proxy in order to obtain a policy.

15. Policyholders can cancel a proxy at any time upon written notice to the Company.

16. A candidate for the Board of Trustees may be nominated by a group of one hundred or more policyholders by filing with the Secretary of the Company a certificate signed by each such member of the group giving the name of the candidate.

17. Annual meeting of the Policyholders shall be held on the second Tuesday of March at 3:00 P.M. at the principal office of the Company, 8401 Connecticut Ave., Suite 105, Chevy Chase, MD 20815.

**COMMERCIAL AUTO POLICY**



# Important Policy Material

**Amalgamated Casualty Insurance Company**

**8401 Connecticut Ave., Suite 105**

**Chevy Chase, MD 20815**

# VIRGINIA BUSINESS AUTO DECLARATIONS

| COMPANY | PRODUCER |
|---|---|
| Amalgamated Casualty Insurance Company<br>PO Box 15033<br>Worcester, MA 01615 | The Hilb Group Of New Jersey, LLC, A Subsidiary Of The Hilb<br>One International Blvd., Ste. #405<br>Mahwah, NJ 07495 |

**ITEM ONE**

| Named Insured: | Legynd Transportation | |
|---|---|---|
| Mailing Address: | PO BOX 892 | |
| | Newport News, VA 23607 | |
| **Policy Period** | | |
| From: | 10/12/2021 | |
| To: | 10/12/2022 | At 12:01 A.M. Standard Time at your mailing address |
| Previous Policy Number: | CAP-20-0108491-02 | |

**Form Of Business:**

☐ Corporation     ☐ Limited Liability Company     ☒ Individual

☐ Partnership     ☐ Other:

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| Premium shown is payable at inception: |
|---|
| Audit Period (If Applicable):   ☐ Annually   ☐ Semi-Annually   ☐ Quarterly   ☐ Monthly |

| Endorsements Attached To This Policy: |
|---|
| **IL 12 01 GEN (11 85)** - POLICY CHANGES - GENERAL CHANGES |
| **COMMERCIAL DECLARATIONS SUMMARY (07 14)** - COMMERCIAL DECLARATIONS SUMMARY |
| **IL DS 00 (07 02)** - COMMON POLICY DECLARATIONS |
| **ACIC COV02 (3/20/2018)** - COVER NOTICE |
| **CA DS 22 (03 06)** - VIRGINIA BUSINESS AUTO DECLARATIONS |
| **CA 00 01 (03 06)** - BUSINESS AUTO COVERAGE FORM |
| **ACIC ENDLIST02 (2015/01/29)** - COMMERCIAL AUTO DECLARATIONS FORMS, ENDORSEMENTS & SCHEDULES |
| **CA 01 16 (04 15)** - VIRGINIA CHANGES - BUSINESS AUTO COVERAGE FORM |
| **CA 02 68 (01 13)** - VIRGINIA CHANGES IN POLICY - CANCELLATION AND NONRENEWAL |
| **CA 20 18 (12 93)** - PROFESSIONAL SERVICES NOT COVERED |
| **IL 00 21 (0392)** - BROAD FORM NUCLEAR EXCLUSION |
| **IL 00 21 (07 02)** - NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| **CA 21 21 (11 02)** - UNINSURED MOTORISTS ENDORSEMENT (VIRGINIA) |
| **IL 12 01 (11 85)** - POLICY CHANGES |
| **IL 00 03 (07 02)** - Calculation Of Premium |
| **IL 00 17 (11 98)** - Common Policy Conditions |
| **ACIC CHANGES01 (0216)** - POLICY CHANGES |

| Countersignature Of Authorized Representative | |
|---|---|
| Name: | Ed Arovas |
| Title: | Chief Operating Officer |
| Signature: | *Ed Arovas* |

| Date: | 4/25/2022 |
|---|---|

**Note**

Officers' facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos* | Limit | Premium |
|---|---|---|---|
| **Liability** | 7 | $125,000 Combined Single Limit | $12,948 |
| **Uninsured/Underinsured Motorists Liability - Bodily Injury (Non-Stacked)** | 7 | $125,000 Combined Single Limit | $354 |
| **Uninsured/Underinsured Motorists Liability - Property Damage (Non-Stacked)** | 7 | Included each accident, subject to deductible of $200 | Included |
| | | **Premium for endorsements** | $0 |
| | | **Estimated Total Premium** | $13,302 |
| *This Policy May Be Subject To Final Audit. | | | |

 © ISO Properties, Inc., 2005 **CA DS 22 03 06**

**ITEM THREE**

**Schedule Of Covered Autos You Own**

| Covered Auto Number: | 3 |
|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged | PO BOX 892<br>Newport News, VA 23607 |
| Description (Year, Model, Trade Name, Body Type, Serial Number (S), Vehicle Identification Number (VIN)) | 2011, Dodge, GRAND CARAVAN EXPRESS, WAG4X24D, 2D4RN4DG8BR601627 |
| **Purchased:** Original Cost New Actual Cost New (N) Or Used (U) | $25,000 |

| | | | | Classification | | | |
|---|---|---|---|---|---|---|---|
| Radius of Operation | Business Use<br>s = service<br>r = retail<br>c = commercial | Size GVW, GCW, or Vehicle Seating Capacity | Age Group | Primary Rating Factor | | Secondary Rating Factor | Code |
| | | | | Liab. | Phys. Dam. | | |
| | | | 10 | | | | |

| Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named To The Right As Interests May Appear At The Time Of The Loss. | |
|---|---|

**Coverages - Premiums, Limits And Deductibles**

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.)

| Coverages | Limit | Premium |
|---|---|---|
| Liability | $125,000 Combined Single Limit | $4,316 |
| Uninsured/Underinsured Motorists Liability - Bodily Injury (Non-Stacked) | $125,000 Combined Single Limit | $118 |
| Uninsured/Underinsured Motorists Liability - Property Damage (Non-Stacked) | Included each accident, subject to deductible of $200 | Included |

© ISO Properties, Inc., 2005   **CA DS 22 03 06**

**ITEM THREE**

**Schedule Of Covered Autos You Own (Cont''d)**

| Covered Auto Number: | 8 |
|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged | PO BOX 892<br>Newport News, VA 23607 |
| Description (Year, Model, Trade Name, Body Type, Serial Number (S), Vehicle Identification Number (VIN)) | 2011, Ford, CROWN VICTORIA POLICE INTERCEPTOR, SEDAN 4D, 2FABP7BV4BX101106 |

| Purchased: | Original Cost New<br>Actual Cost New (N) Or Used (U) | $27,500 |
|---|---|---|

| Classification | | | | | | | |
|---|---|---|---|---|---|---|---|
| Radius of Operation | Business Use<br>s = service<br>r = retail<br>c = commercial | Size GVW, GCW, or Vehicle Seating Capacity | Age Group | Primary Rating Factor | | Secondary Rating Factor | Code |
| | | | | Liab. | Phys. Dam. | | |
| | | | 10 | | | | |
| Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named To The Right As Interests May Appear At The Time Of The Loss. | | | | | | | |

| Coverages - Premiums, Limits And Deductibles | | |
|---|---|---|
| (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | |
| **Coverages** | **Limit** | **Premium** |
| Liability | $125,000 Combined Single Limit | $4,316 |
| Uninsured/Underinsured Motorists Liability - Bodily Injury (Non-Stacked) | $125,000 Combined Single Limit | $118 |
| Uninsured/Underinsured Motorists Liability - Property Damage (Non-Stacked) | Included each accident, subject to deductible of $200 | Included |

© ISO Properties, Inc., 2005                **CA DS 22 03 06**

**ITEM THREE**

**Schedule Of Covered Autos You Own (Cont''d)**

| Covered Auto Number: | 9 |
|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged | PO BOX 892<br>Newport News, VA 23607 |
| Description (Year, Model, Trade Name, Body Type, Serial Number (S), Vehicle Identification Number (VIN)) | 2011, Dodge, GRAND CARAVAN MAINSTREET, WAG4X24D, 2D4RN3DG3BR669232 |
| Purchased: Original Cost New Actual Cost New (N) Or Used (U) | $26,250 |

| | | | | Classification | | | |
|---|---|---|---|---|---|---|---|
| Radius of Operation | Business Use<br>s = service<br>r = retail<br>c = commercial | Size GVW, GCW, or Vehicle Seating Capacity | Age Group | Primary Rating Factor | | Secondary Rating Factor | Code |
| | | | | Liab. | Phys. Dam. | | |
| | | | 10 | | | | |

Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named To The Right As Interests May Appear At The Time Of The Loss.

**Coverages - Premiums, Limits And Deductibles**

(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.)

| Coverages | Limit | Premium |
|---|---|---|
| Liability | $125,000 Combined Single Limit | $4,316 |
| Uninsured/Underinsured Motorists Liability - Bodily Injury (Non-Stacked) | $125,000 Combined Single Limit | $118 |
| Uninsured/Underinsured Motorists Liability - Property Damage (Non-Stacked) | Included each accident, subject to deductible of $200 | Included |

| Total Premiums | |
|---|---|
| Liability | $12,948 |
| Uninsured Motorists | $354 |

© ISO Properties, Inc., 2005  **CA DS 22 03 06**



**COMMERCIAL AUTOMOBILE INSURANCE INSTALLMENT PAYMENT SCHEDULE**

Policy Number      CAP-21-0108491-03

**PAYMENT SCHEDULE**

| Bill No. | Bill Date | Due Date | Premium | Surcharge(s)/Fees | Installment Fee | Bill Amount |
|---|---|---|---|---|---|---|
| Down Payment | 5/12/2022 | 5/12/2022 | $480.00 | $0.00 | $0.00 | $480.00 |
| Bill 2 | 5/23/2022 | 6/12/2022 | $479.00 | $0.00 | $5.00 | $484.00 |
| Bill 3 | 6/22/2022 | 7/12/2022 | $479.00 | $0.00 | $5.00 | $484.00 |
| Bill 4 | 7/23/2022 | 8/12/2022 | $479.00 | $0.00 | $5.00 | $484.00 |
| **Total:** | | | **$1,917.00** | **$0.00** | **$15.00** | **$1,932.00** |

**COMMERCIAL AUTO**
**CA 00 01 03 06**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V –** Definitions.

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

© ISO Properties, Inc., 2005

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III – PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

© ISO Properties, Inc., 2005

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

  **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

  **(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

  **(1)** How, when and where the "accident" or "loss" occurred;

  **(2)** The "insured's" name and address; and

  **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

  **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

© ISO Properties, Inc., 2005     ☐

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

© ISO Properties, Inc., 2005                **CA 00 01 03 06**          ☐

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraph **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005



**Amalgamated Casualty Insurance Company**

PO Box 15033

Worcester, MA 01615

NAMED INSURED AND ADDRESS:                                      POLICY NUMBER: **CAP-21-0108491-03**
**Legynd Transportation**                                          REVISION DATE: **April 26, 2022**
**PO BOX 892**
**Newport News, VA 23607**

### COMMERCIAL AUTO DECLARATIONS FORMS, ENDORSEMENTS & SCHEDULES

| | |
|---|---|
| 1 | COMMERCIAL DECLARATIONS SUMMARY (07 14) - COMMERCIAL DECLARATIONS SUMMARY |
| 2 | IL DS 00 (07 02) - COMMON POLICY DECLARATIONS |
| 3 | IL 12 01 GEN (11 85) - POLICY CHANGES - GENERAL CHANGES |
| 4 | ACIC COV02 (3/20/2018) - COVER NOTICE |
| 5 | CA DS 22 (03 06) - VIRGINIA BUSINESS AUTO DECLARATIONS |
| 6 | CA 00 01 (03 06) - BUSINESS AUTO COVERAGE FORM |
| 7 | ACIC ENDLIST02 (2015/01/29) - COMMERCIAL AUTO DECLARATIONS FORMS, ENDORSEMENTS & SCHEDULES |
| 8 | CA 01 16 (04 15) - VIRGINIA CHANGES - BUSINESS AUTO COVERAGE FORM |
| 9 | CA 02 68 (01 13) - VIRGINIA CHANGES IN POLICY - CANCELLATION AND NONRENEWAL |
| 10 | CA 20 18 (12 93) - PROFESSIONAL SERVICES NOT COVERED |
| 11 | IL 00 21 (0392) - BROAD FORM NUCLEAR EXCLUSION |
| 12 | IL 00 21 (07 02) - NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| 13 | CA 21 21 (11 02) - UNINSURED MOTORISTS ENDORSEMENT (VIRGINIA) |
| 14 | IL 12 01 (11 85) - POLICY CHANGES |
| 15 | IL 00 03 (07 02) - Calculation Of Premium |
| 16 | IL 00 17 (11 98) - Common Policy Conditions |
| 17 | ACIC CHANGES01 (0216) - POLICY CHANGES |

COMMERCIAL AUTO
CA 01 16 04 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – BUSINESS AUTO COVERAGE FORM

For a covered "auto" licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A. Coverage** of **Section II – Liability Coverage** is replaced by the following:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We have the right and duty to defend any "suit" for such damages, even if the "suit" is groundless, false or fraudulent. However, we have no duty to defend "suits" for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**B.** Paragraph **A.1.b.** of **Section II – Liability Coverage** is amended by the addition of the following:

**1. Who Is An Insured**

The following are "insureds":

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(6)** Your customers, if you are in the motor vehicle business. However, if a customer of yours:

**(a)** Has no other valid and collectible insurance applicable to the same "accident", they are an "insured" but only up to the financial responsibility limits specified in Section 46.2-472 of the Code of Virginia.

**(b)** Has other valid and collectible insurance applicable to the same "accident" less than the financial responsibility limits specified in Section 46.2-472, they are an "insured" only for the amount by which the financial responsibility law limits exceed the limits of their other insurance.

Motor vehicle business means the business of selling, leasing, repairing, servicing, storing or parking motor vehicles which are:

**(a)** Used for demonstration purposes by a prospective purchaser;

**(b)** Loaned or leased to another as a temporary substitute while such person's "auto" is being repaired or serviced; or

**(c)** Leased to another for a period of six months or more.

**C.** Paragraph **A.2. Coverage Extensions** of **Section II – Liability Coverage** is amended as follows:

**1.** Paragraphs **a.(3)**, **a.(5)** and **a.(6)** of **Supplementary Payments** are replaced by the following:

**a. Supplementary Payments**

We will pay for the "insured":

**(3)** The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

**(5)** All costs taxed against the "insured" in any "suit" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**2.** Paragraph **a. Supplementary Payments** is amended by the addition of the following:

**a. Supplementary Payments**

We will pay for the "insured":

**(7)** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**D.** Paragraph **A.2.b.(1)** of **Section II – Liability Coverage** is replaced by the following:

**2. Coverage Extensions**

**b. Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used.

**E.** Paragraph **B. Exclusions** of **Section II – Liability Coverage** is amended as follows:

**1.** Paragraph **B.4. Employee Indemnification And Employer's Liability** Exclusion is replaced by the following:

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of employment by the "insured"; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**2.** Paragraph **B.5. Fellow Employee** Exclusion is deleted.

**3.** Paragraph **B.6. Care, Custody Or Control** Exclusion is replaced by the following:

"Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**4.** Paragraph **B.11. Pollution** Exclusion is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". This exclusion does not apply if the discharge is sudden and accidental.

**5.** Paragraph **B.12. War** Exclusion is replaced by the following:

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**F.** Paragraph **C. Limit Of Insurance** of Section **II** is replaced by the following:

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

**2.** We will apply the limit shown in the Declarations to first provide the separate limits required by Virginia law as follows:

**a.** $25,000 for "bodily injury" to any one person caused by any one "accident"; and

**b.** Subject to **2.a.** above, $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

c. $20,000 for "property damage" caused by any one "accident".

This provision will not change the Limit of Insurance.

**G.** The **Business Auto Conditions** of Section **IV** are amended as follows:

**1.** Paragraph **A.2.b.(3)** of the **Duties In The Event Of Accident, Claim Or Loss** Condition is replaced by the following:

**b.** Additionally, you and any other involved "insured" must:

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit". The "insured" will be deemed not to have cooperated with us only if his or her failure or refusal to do so harms our defense of an action for damages.

**2.** Paragraph **A.2.c.** of the **Duties In The Event Of Accident, Claim Or Loss** Condition is replaced by the following:

**c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following, but only with respect to a Physical Damage claim:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Do what is reasonably necessary to protect the covered "auto" from further damage. Also keep a record of your expenses for payment in the settlement claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3.** Paragraph **A.4.** of the **Loss Payment – Physical Damage Coverages** Condition is replaced by the following:

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include:

**(1)** The applicable sales and use tax for the damaged or stolen property;

**(2)** Any applicable titling and license transfer fees incurred in obtaining a replacement vehicle in the event of a total "loss" to a covered "auto"; and

**(3)** Any applicable general average, salvage or disposal charges.

**4.** Paragraph **B.2. Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

Coverage for your claim under this Coverage Form is void in any case of fraud by you at any time as it relates to the Coverage Form. It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**5.** Paragraph **B.5.b.** of the **Other Insurance** Condition is replaced by the following:

For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is deemed to be a covered "auto" you don't own.

**6.** Paragraph **B.6. Premium Audit** Condition is replaced by the following:

The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**7.** Paragraph **B.8.** of the **Two Or More Coverage Forms Or Policies Issued By Us** Condition is deleted.

**H.** **Section V – Definitions** is amended as follows:

**1.** The "covered pollution cost or expense" definition is deleted.

   © Insurance Services Office, Inc., 2014

**2.** Exceptions **b.** and **c.** to the "insured contract" definition are deleted.

**3.** The definition of "suit" is replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

**I. Changes In Endorsements**

**1.** All references to Auto Medical Payments are replaced in the endorsements by Medical Expense Benefits.

**2.** All references to personal injury protection (no-fault) and "covered pollution cost or expense" in any endorsement do not apply.



**AMALGAMATED**
CASUALTY INSURANCE CO.
EST. 1938

## Vehicle Schedule

**Policy Number:**            CAP-21-0108491-03

**Prospective Insured:**        Legynd Transportation

| No. | Year/Make/Model | VIN | Liability | | PIP | Med Pay | UM/UIM | Stated Amount Insurance | Collision & Comprehensive | | Total Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Ded | Premium | | | | | Deductible | Premium | |
| 3 | 2011 Dodge GRAND CARAVAN EXPRESS | 2D4RN4DG8BR601627 | | $4,316 | $0 | $0 | $118 | Not Covered | Not Covered | $N/A | $4,434 |
| 8 | 2011 Ford CROWN VICTORIA POLICE INTERCEPTOR | 2FABP7BV4BX101106 | | $4,316 | $0 | $0 | $118 | Not Covered | Not Covered | $N/A | $4,434 |
| 9 | 2011 Dodge GRAND CARAVAN MAINSTREET | 2D4RN3DG3BR669232 | | $4,316 | $0 | $0 | $118 | Not Covered | Not Covered | $N/A | $4,434 |
| **Total** | | | | **$12,948** | **$0** | **$0** | **$354** | | | **$N/A** | **$13,302** |

COMMERCIAL AUTO
CA 02 68 01 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES IN POLICY – CANCELLATION AND NONRENEWAL

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and a covered "auto" you own is of the private passenger type and not used in your occupation, profession or business, other than farming, and is not used as a public or livery conveyance; and your business shown in the Declarations is not a garage, sales agency, repair shop, service station or public parking place, then the **Cancellation** Common Policy Condition does not apply. The following conditions apply instead:

**1. Cancellation**

   **a.** You or your attorney-in-fact may cancel the policy by returning to us or by mailing to us advance written notice of the date cancellation is to take effect.

   **b.** We may cancel this policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation at least:

     **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

     **(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

   **c.** When this policy is in effect 60 days or more or is a renewal or continuation policy, we may only cancel for one or more of the following reasons:

     **(1)** Nonpayment of premium.

     **(2)** Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period or, if the policy is a renewal, during its policy period or the 90 days immediately preceding the last effective date.

     **(3)** You or your attorney-in-fact has notified us that you have changed your legal residence to a state other than Virginia and your covered "auto" will be principally garaged in your new state.

     **(4)** We replace this policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this policy is cancelled and will end a year after this policy begins or on this policy's expiration date, whichever is earlier.

   **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **e.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancel, the refund, if any, will be computed in accordance with the procedure described in Paragraph **C.** of this endorsement.

   **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2012

**2. Nonrenewal**

    **a.** If we decide not to renew or continue this policy, we will mail the first Named Insured shown in the Declarations notice at least 45 days before the end of the policy period. If the policy is written for a period of less than one year or without a fixed expiration date, we will have the right not to renew or continue a particular coverage only at the end of any six-month period following its original effective date.

    **b.** If we or our agent offers to renew or continue this policy and you or your attorney-in-fact does not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

**3. Mailing Of Notices**

    **a.** Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address by certificate of mailing, provided we retain a copy of said notice, or by registered or certified mail, pursuant to Sections 38.2-231 and 38.2-2208 of the Code of Virginia. However, we may deliver any notice instead of mailing it.

    **b.** The notice of cancellation or nonrenewal will state the specific reason(s) for cancellation or nonrenewal, except when a policy is being cancelled or nonrenewed for nonpayment of premium.

**B.** For all other risks not described in Paragraph **A.** above:

**1.** Paragraphs **1.** and **2.** of the **Cancellation** Common Policy Condition are replaced by the following:

    **a.** You or your attorney-in-fact may cancel the policy by mailing or delivering to us advance written notice of the date cancellation is to take effect.

    **b.** We may cancel the policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation, stating the reason(s) for cancellation, at least:

        **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

**2.** Paragraph **3.** of the **Cancellation** Common Policy Condition does not apply.

**3.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

If this policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancel, the refund, if any, will be computed in accordance with the procedure described in Paragraph **C.** of this endorsement.

**4.** The following conditions are added:

    **a. Nonrenewal**

        **(1)** We may nonrenew the policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of nonrenewal, stating the reason for nonrenewal, at least:

           **(a)** 15 days before the expiration date of the policy if we nonrenew for nonpayment of premium; or

           **(b)** 45 days before the expiration date of the policy if we nonrenew for any other reason.

        **(2)** If we or our agent offers to renew or continue this policy and you or your attorney-in-fact does not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

    **b. Mailing Of Notices**

    Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address by certificate of mailing, provided we retain a copy of said notice, or by registered or certified mail, pursuant to Sections 38.2-231 and 38.2-2208 of the Code of Virginia. However, we may deliver any notice instead of mailing it.

**C.** The following provisions govern the calculation of return premium for all risks:

**1.** We will compute return premium pro rata and round to the next higher whole dollar when a policy is cancelled:

    **a.** At our request;

    **b.** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

    **c.** And rewritten by us or a member of our company group; or

   **d.** After the first year, if it is a prepaid policy written for a term of more than one year.

**2.** When this policy is cancelled at your request (except when Paragraph **1.b., 1.c.** or **1.d.** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**3.** When this policy is cancelled at your request and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

   **a.** Final annual premium will be determined on the basis of the average value reported during the period in which the policy was in effect.

   **b.** Pro rata earned premium will be determined based on the final annual premium for the number of days the policy was in force as determined by Paragraph **3.a.** rounded to the next higher whole dollar.

   **c.** Pro rata unearned premium will be determined by subtracting Paragraph **3.b.** from Paragraph **3.a.**

   **d.** The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

   **e.** Calculate the short rate earned premium by adding Paragraphs **3.b.** and **3.d.**

   **f.** If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

   **g.** If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

However, earned premium will not be less than our policywriting minimum premium.

**COMMERCIAL AUTO**
**CA 20 18 12 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROFESSIONAL SERVICES NOT COVERED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusions:

This insurance does not apply to:

**1.** "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.

**2.** "Bodily injury" resulting from food or drink furnished with these services.

**3.** "Bodily injury" or "property damage" resulting from the handling of corpses.

IL 00 21

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## BROAD FORM

This endorsement modifies insurance provided under the following:

| ALL AUTOMOBILE LIABILITY, GENERAL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN PERSONAL AUTO POLICY, SPECIAL PACKAGE AUTOMOBILE, COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE |
|---|

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| Endorsement Effective | Policy Number |
|---|---|
| 4/25/2022 | CAP-21-0108491-03 |

| Named Insured |
|---|
| Legynd Transportation |

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to **bodily injury** or **property damage**:

   (**1**)   With respect to which an **insured**  under  the  policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

   (**2**)   Resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.**   Under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

   **C.**   Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if:

   (**1**)   The **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (b) has been discharged or dispersed therefrom;

   (**2**)   The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

   (**3**)   The **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

2. As used in this endorsement:

   "**Hazardous properties**" include radioactive, toxic or explosive properties;

   "**Nuclear material**" means **source material, special nuclear material** or **by-product material**;

   "**Source material**", "**special nuclear material**", and "**by-product material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**FORM IL 00 21—NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT BROAD FORM**
       **Texas Standard Automobile Endorsement**
       **Prescribed March 18, 1992**

"**Spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**Waste**" means any waste material (a) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (b) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

"**Nuclear facility** " means:

(**a**)   Any **nuclear reactor**;

(**b**)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**;

(**c**)   Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(**d**)   Any structure, basin, excavation, premises or place prepared or used for the storage of disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property damage**" includes all forms of radioactive contamination of property.

"**Spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**Waste**" means any waste material (a) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (b) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

"**Nuclear facility** " means:

(**a**)   Any **nuclear reactor**;

(**b**)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**;

(**c**)   Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(**d**)   Any structure, basin, excavation, premises or place prepared or used for the storage of disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property damage**" includes all forms of radioactive contamination of property.

"**Spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**Waste**" means any waste material (a) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (b) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

"**Nuclear facility** " means:

(**a**)   Any **nuclear reactor**;

(**b**)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**;

(**c**)   Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(**d**)   Any structure, basin, excavation, premises or place prepared or used for the storage of disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**Nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**Property damage**" includes all forms of radioactive contamination of property.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

**COMMERCIAL AUTO**
**CA 21 21 11 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINSURED MOTORISTS ENDORSEMENT
## (VIRGINIA)

**A. Words And Phrases With Special Meaning**

The following words and phrases have special meaning throughout this endorsement and appear in quotation marks when used:

1. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

2. "We", "us", and "our" mean the company providing insurance.

3. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage" the "insured" neither expected nor intended.

4. "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for "bodily injury" or "property damage" reduced by the payment of any other claims arising out of the same "accident".

5. "Bodily injury" means bodily injury, sickness or disease including death resulting from any of these.

6. "Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

7. "Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household, including a ward or foster child.

8. "Insured" means any person or organization qualifying as an insured in the **Who Is An Insured** section of this endorsement, including the personal representative of any insured. Except with respect to "our" Limit Of Liability, the insurance afforded applies separately to each insured who is seeking coverage under this endorsement.

9. "Loss" means direct and accidental damage or loss.

10. "Property damage" means damage to or loss of use of tangible property.

11. "Occupying" means in, upon, using, getting in, on, out of or off.

12. "Temporary substitute" means a motor vehicle that is being used in place of a "covered auto". The "covered auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

13. "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage", including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq.) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

14. "Uninsured motor vehicle" means a motor vehicle:

    a. For which:

       1. There is no "bodily injury" liability insurance and "property damage" liability insurance in the amounts specified by Section 46.2-472 of the Code of Virginia.

       2. There is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer.

       3. There is no bond or deposit of money or securities in lieu of such insurance.

       4. The owner of the vehicle has not qualified as a self-insurer under the provisions of Section 46.2-368, or

       5. The owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

If the owner or operator of any motor vehicle that causes "bodily injury" or "property damage" to the "insured" is unknown, and if the damage or injury results from an "accident" where there has been no contact between that motor vehicle and the motor vehicle occupied by the "insured", or where there has been no contact with the person of the "insured" if the "insured" was not "occupying" a motor vehicle, then for the "insured" to recover under this endorsement pursuant to Paragraph **a.** of this definition, the "accident" shall be reported promptly to either:

  **1.** The insurer or;

  **2.** A law-enforcement officer having jurisdiction in the county or city in which the "accident" occurred. If it is not reasonably practicable to make the report promptly, the report shall be made as soon as reasonably practicable under the circumstances.

  **b.** Which is an "underinsured motor vehicle".

## B. We Will Pay

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle".

## C. We Will Not Cover – Exclusions

This insurance does not apply to:

**1.** A "bodily injury" or "property damage" claim settled by the "insured" without "our" consent with anyone who may be legally liable.

**2.** The direct or indirect benefit of any insurer of property.

**3.** The first $200 of the total amount of "property damage" as the result of any one "accident" involving an unidentifiable driver or owner of an "uninsured motor vehicle". This exclusion does not apply if the owner or operator of the "uninsured motor vehicle" causing the damage can be identified.

**4.** Anyone using the "covered auto" without a reasonable belief that the person is entitled to do so.

## D. Who Is Insured

**1.** "You" or any "family member".

**2.** Anyone else "occupying" a "covered "auto".

**3.** Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under **1.** or **2.** above.

## E. Our Limit Of Liability

**1.** Regardless of the number of "covered autos", "insureds", claims made or motor vehicles involved in the "accident", the most "we" will pay for all damages resulting from any one "accident" is the limit of **Uninsured Motorists Insurance** shown in the Schedule or Declarations. However, if more than one "covered auto" is involved in the same "accident", the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations will apply separately to each of these "covered autos". Such limit of insurance shall first provide the separate limits required by the Virginia Motor Vehicle Safety Responsibility Act.

**2.** Except with respect to an "underinsured motor vehicle", damages otherwise payable under this coverage:

  **a.** Shall be reduced by all sums paid because of "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.

  **b.** With respect to an employee of a self-insured employer, shall be reduced by all sums paid or payable because of "bodily injury" under a workers' compensation law.

## F. Conditions

The conditions applicable to this coverage are as follows:

**1. Other Insurance**

  **a.** For "bodily injury" to an "insured" while "occupying" a motor vehicle that is not a "covered auto", this coverage shall apply only as excess insurance over any other similar insurance available to that "insured" and applicable to that motor vehicle as primary insurance. However, this paragraph does not apply to an "underinsured motor vehicle".

  **b.** Except as provided in Paragraph **a.** above, if the "insured" has other similar "bodily injury" insurance available to him or her and applicable to the "accident", "we" shall not be liable for a greater proportion of any "loss" to which this coverage applies than the limit of liability for this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance. However, this provision does not apply to an "underinsured motor vehicle".

  **c.** For "property damage", **Uninsured Motorists Insurance** is excess over all other collectible insurance of any kind applicable to the "property damage".

 © ISO Properties, Inc., 2002

**d.** If the injured person is entitled to underinsured motorists coverage under more than one policy, the following order of priority applies and any amount "available for payment" shall be credited against such policies in the following order of priority:

**(1)** The policy covering a motor vehicle "occupied" by the injured person at the time of the "accident".

**(2)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is a named insured.

**(3)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is other than a named insured.

If there is more than one insurer providing coverage under one of the payment priorities set forth in Paragraph **d.** above, we will pay only "our" share of the "loss". "Our" share is the proportion that "our" limit of liability bears to the total of all limits applicable on the same level of priority.

**2. Our Right To Recover From Others**

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**3. Legal Action Against Us**

No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

**4. Changes**

If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of the change.

**5. Transfer Of Rights And Duties**

"Your" rights and duties under this endorsement may not be assigned without "our" written consent.

**6. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve "us" of any obligations under this endorsement.

**7. Policy Period, Coverage Territory**

Under this endorsement, "we" cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America

**b.** The territories and possessions of the United States of America.

**c.** Puerto Rico; and

**d.** Canada

"We" also cover "loss" to, or "accidents" involving, a "covered auto" while being transported between any of these places.

**8. Concealment, Misrepresentation, Or Fraud**

Coverage for "your" claim under this endorsement is void in any case of fraud by "you" at any time as it relates to this coverage. It is also void if "you", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This endorsement;

**b.** The "covered auto";

**c.** "Your" interest in the "covered auto"; or

**d.** A claim under this coverage.

**9. Premium Audit**

**a.** The estimated premium for this endorsement is based on the exposures "you" told "us" "you" would have when this policy began. "We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this endorsement will be computed annually, based on "our" rates or premiums in effect at the beginning of each year of the policy.

**10. Arbitration**

**a.** If "we" and an "insured" disagree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

 © ISO Properties, Inc., 2002

"You" are not required to arbitrate; however, if both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. "We" will pay all arbitration expenses if "we" request arbitration. If an "insured" requests the arbitration, each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision can be reached by two of the arbitrators but will not be binding.

 © ISO Properties, Inc.,  2002 **CA 21 21 11 02**

# POLICY CHANGES

| | Policy Change Number | **9** |

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CAP-21-0108491-03 | 4/25/2022 | Amalgamated Casualty Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Legynd Transportation | |

| COVERAGE PARTS AFFECTED |
|---|
| Business Auto Coverage |

| CHANGES |
|---|

A. Paragraph 14 is added under Section B- Exclusions under Section II- Liability Coverage

14. This insurance does not apply to punitive damages, exemplary damages, fines, penalties, treble damages or other increase in damages resulting from the multiplication of compensatory damages, in whatever form assessed.

If a "suit" is brought against the insured seeking damages to which this insurance applies and punitive or exemplary damages, we will provide a defense to such "suit". However, we will have no obligation to pay for any costs, interest, or judgment attributable to punitive or exemplary damages.

Provisions of this endorsement do not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulation.

All other terms and conditions of this policy remain unchanged.

_Ed Arovas_
_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

IL 12 01 11 85

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

   Copyright, Insurance Services Office, Inc., 1998     □

# POLICY CHANGES

Policy Change Number          **9**

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CAP-21-0108491-03 | 4/25/2022 | Amalgamated Casualty Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Legynd Transportation | |

| COVERAGE PARTS AFFECTED |
|---|
| Business Auto Coverage |

| CHANGES |
|---|
| Delete - Auto: 2006 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FAHP71W76X108805 |
| Delete - Auto: 2010 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FABP7BV4AX112623 |
| Delete - Auto: 2010 Ford CROWN VICTORIA POLICE INTERCEPTOR 2FABP7BV9AX139879 |
| Delete - Auto: 2013 Dodge GRAND CARAVAN AVP/GRAND CARAVAN SE 2C4RDGBG9DR598471 |
| Delete - Auto: 2014 Dodge GRAND CARAVAN SXT 2C4RDGCG4ER337166 |
| |
| Premium Change: -$10,330 |

_Brian T. Mancino_
Authorized Representative Signature

**INSURANCE CARD**

Legynd Transportation
POLICY #:        CAP-21-0108491-03
10/12/2021 thru 10/12/2022

INDEPENDENT - VA
CAB #:        18
2011 Ford CROWN VICTORIA POLICE INTERCEPTOR

VIN #:        2FABP7BV4BX101106

**Amalgamated Casualty Insurance Company**
**PO Box 15033, Worcester, MA 01615  ●  (202) 547-8700**

**INSURANCE CARD**

Legynd Transportation
POLICY #:        CAP-21-0108491-03
10/12/2021 thru 10/12/2022

INDEPENDENT - VA
CAB #:        19
2011 Dodge GRAND CARAVAN MAINSTREET

VIN #:        2D4RN3DG3BR669232

**Amalgamated Casualty Insurance Company**
**PO Box 15033, Worcester, MA 01615  ●  (202) 547-8700**

**INSURANCE CARD**

Legynd Transportation
POLICY #:        CAP-21-0108491-03
10/12/2021 thru 10/12/2022

INDEPENDENT - VA
CAB #:        74
2011 Dodge GRAND CARAVAN EXPRESS

VIN #:        2D4RN4DG8BR601627

**Amalgamated Casualty Insurance Company**
**PO Box 15033, Worcester, MA 01615  ●  (202) 547-8700**

- Do not admit fault OR reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved vehicles.  Also, collect contact information for all passengers and witnesses.
- Contact the police or call 911, if applicable.
- Collect names and badge numbers of police officers and other emergency personnel on the scene.
- If possible, photograph the overall scene of the accident and the damage to all vehicles.
- Contact Amalgamated by calling 202-547-8700 or visit acicinsure.com to report the accident.

- Do not admit fault OR reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved vehicles.  Also, collect contact information for all passengers and witnesses.
- Contact the police or call 911, if applicable.
- Collect names and badge numbers of police officers and other emergency personnel on the scene.
- If possible, photograph the overall scene of the accident and the damage to all vehicles.
- Contact Amalgamated by calling 202-547-8700 or visit acicinsure.com to report the accident.

- Do not admit fault OR reveal the limits of your liability coverage to anyone.
- Exchange contact information; get year, make, model, plate number, insurance carrier and policy number of all involved vehicles.  Also, collect contact information for all passengers and witnesses.
- Contact the police or call 911, if applicable.
- Collect names and badge numbers of police officers and other emergency personnel on the scene.
- If possible, photograph the overall scene of the accident and the damage to all vehicles.
- Contact Amalgamated by calling 202-547-8700 or visit acicinsure.com to report the accident.

THIS PAGE CONTAINS NO POLICY
INFORMATION