IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



AMALGAMATED CASUALTY
INSURANCE COMPANY

        Plaintiff,

v.                                         CIVIL ACTION NO. 4:22-cv-122

LEGYND TRANSPORTATION, LLC

        Defendant,

LATASHA ELEY,

        Intervenor Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Amalgamated Casualty Insurance Company ("Amalgamated" or "Plaintiff") Motion for Default Judgment ("Motion"). ECF Nos. 15, 16 ("Pl.'s Mot."). Legynd Transportation, LLC ("Legynd" or "Defendant") has not appeared in this case. LaTasha Eley ("Ms. Eley") has filed an Answer. ECF Nos. 12 at Ex. 1, 22. On March 21, 2024, the Court held a hearing on this matter. ECF No. 35. This matter is now ripe for judicial determination. For the reasons stated below, the Motion for Default Judgment is **GRANTED**.

        **I.**     **FACTUAL AND PROCEDURAL HISTORY**

On November 21, 2022, Plaintiff filed a Complaint seeking declaratory judgment that its insurance policy does not obligate it to defend or indemnify Defendant and be liable for the damages Ms. Eley suffered during an accident. Pl.'s Compl., ECF No. 1. According to the Complaint, on August 8, 2022, Ms. Eley was operating as an independent taxi driver under contract with Defendant. *Id.* ¶¶ 10–11. Ms. Eley was driving a 2011 Dodge Caravan ("the vehicle")

1

Defendant owned or leased in Virginia Beach, Virginia. *Id.* Ms. Eley lost control of the vehicle and sustained bodily injuries and incurred damages. *Id.* Furthermore, Ms. Eley informed Plaintiff that the tire failure was the cause of the accident because Defendant allegedly failed to maintain the vehicle. *Id.* ¶ 12. Ms. Eley obtained counsel and presented a demand to Plaintiff for $125,000. *Id.* ¶ 13.

Allegedly, Plaintiff received notice about the accident on September 23, 2022, forty-six days after the accident. *Id.* ¶ 14. Around the time the accident occurred, the vehicle was moved from the accident site to a storage lot with all four tires on the vehicle. *Id.* ¶ 15. When Plaintiff allegedly first learned about the accident, the failed tire was removed from the vehicle and subsequently lost. *Id.* ¶ 16. As a result, Plaintiff claims it was denied the opportunity to investigate the accident because Defendant failed to provide prompt notice regarding the accident. *Id.* Under the insurance contract between Plaintiff and Defendant, Defendant has a duty to provide prompt notice in the event of an accident and to cooperate and preserve evidence. *Id.* ¶¶ 17–18.

On December 16, 2022, Plaintiff served a copy of the Summons and Complaint on Defendant. ECF No. 5. On January 9, 2023, the Clerk filed a Notice to Counsel for answer status regarding the case since Defendant failed to respond, which Plaintiff subsequently filed. ECF Nos. 6, 7. Plaintiff later filed a Request for Entry of Default regarding Defendant's failure to respond, ECF No. 8, which the Clerk entered on January 9, 2023. ECF No. 10. On February 6, 2023, Ms. Eley filed a Motion to Intervene as a matter of right to protect her interest, which the Court granted on September 18, 2023. ECF Nos. 11, 12, 18, 19, 21. On July 14, 2023, Plaintiff filed a Motion for Default Judgment and requested a hearing. ECF Nos. 15, 16, 17.

On March 14, 2024, Plaintiff filed a notice of deposition transcript of Hassan E. Ali, the agent and sole member of Defendant. ECF No. 34. During the deposition on November 7, 2023,

Mr. Ali admitted to receiving service of process pertaining to the accident but refused to file a responsive pleading. *Id.* at 68–69. Additionally, Mr. Ali testified he learned about the accident around August 10, 2022, from people in his office. *Id.* at 78–79.

On March 21, 2024, the Court held a hearing on the Motion. ECF No. 35. During the hearing, Plaintiff argued that Defendant failed to provide Plaintiff prompt notice of the accident and protect the vehicle from further damage. *Id.* at 5–6. On April 9, 2024, Plaintiff filed a Notice of Partial Settlement informing the Court that Plaintiff and Ms. Eley settled the action leaving Legynd as the sole defendant.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). The Court may grant default judgment when a defendant fails to respond to a complaint for declaratory relief after being

properly served. *Scottsdale Ins. Co. v. Bounds*, No. CIV. BEL-11-2912, 2012 WL 1576105, at *3 (D. Md. May 2, 2012).

> When determining whether to grant a motion for default judgment, courts may consider:
>
>> [(1)] the amount of money potentially involved; [(2)] whether material issues of fact or issues of substantial public importance are at issue; [(3)] whether the default is largely technical; [(4)] whether plaintiff has been substantially prejudiced by the delay involved; [(5)] whether the grounds for default are clearly established or are in doubt; [(6)] how harsh an effect a default judgment might have; and [(7)] whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*White*, 618 F. Supp. 2d at 506 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2685 (3d ed. 1998)) (internal quotations omitted).

Although a defaulting party admits the factual allegations in the filings of the opposing party, a court must evaluate the sufficiency of the allegations to determine if the party moving for default judgment states a cause of action. *See Globalsantafe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to a party where the party failed to state a valid claim).

## III.   DISCUSSION

### A. Default Judgment

As a preliminary matter, both Amalgamated and Ms. Eley assert that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[1] *See* Pl.'s Compl ¶¶ 3–5; ECF No. 12, 22. Additionally, the face of the insurance contract calls for Virginia law to apply.[2] Pl.'s Compl. Ex. 1. Thus, the Court has jurisdiction and will apply Virginia law to the insurance contract dispute.

Here, default judgment against Defendant is appropriate because it has failed to respond to the Complaint or otherwise assert a claim.[3] First, Plaintiff's claim is not for a sum as it seeks declaratory relief. *See* Pl.'s Compl. Second, the issues are not of substantial importance, as Plaintiff and Ms. Eley have settled, leaving Defendant only. Third, the default is not "largely technical" as Defendant received notice of the instant action in November 2022, yet, it has chosen to ignore the proceedings in this case, "not merely missed a deadline by a few days." *White*, 618 F. Supp. 2d at 506. Fourth, Plaintiff has been substantially prejudiced by the delay because it has prolonged the time Plaintiff spent waiting to declare its rights. Fifth, the factual and procedural history clearly establish the grounds for default as Defendant has neglected to appear. Sixth, the effect of the judgment is not harsh, considering Ms. Eley received a settlement for her injuries and Defendant deliberately chose to not appear. Finally, there is no indication that Defendant's good-faith mistake or excusable neglect caused the default. Consequently, Defendant has forfeited any claims to the insurance policy at issue in this case. Therefore, if Plaintiff establishes that it is entitled to declaratory relief, then the Court will find that granting default judgment against Defendant is

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds. . . $75,000. . . and is between citizens of different states." 28 U.S.C. § 1332(a)(1).

[2] In Virginia, if a contract includes a choice of law provision, that provision governs. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 (1990). If the contract does not include a choice of law provision, the place where the contract is made governs. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004). Here, the contract was made in Virginia.

[3] Plaintiff settled the action with Ms. Eley, leaving Legynd as the sole defendant in this case. ECF No. 38.

appropriate. *See* Restatement (Second) of Judgments § 33 (1982) (stating "a court should not make a declaration upon default on the basis of the pleadings alone but should require the plaintiff to present enough evidence to warrant the granting of declaratory relief.").

### B. Declaratory Relief

Under 28 U.S.C. § 2201, it states, "upon the filing of an appropriate pleading, [a federal court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "[T]he Fourth Circuit has explained that a declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Allstate Prop. & Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 686–87 (N.D.W. Va. 2013) (internal citation and quotation omitted). Here, Plaintiff asks the Court to declare that it has no obligation to provide insurance coverage to Defendant after Defendant failed to abide by the insurance contract. Thus, the Court will determine whether Plaintiff stated a claim for declaratory relief.

In Virginia, courts "interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Evanston Ins. Co. v. Harbor Walk Dev., LLC*, 814 F. Supp. 2d 635, 643 (E.D. Va. 2011), *aff'd sub nom. Evanston Ins. Co. v. Germano*, 514 F. App'x 362 (4th Cir. 2013) (internal citation and quotation omitted). A court must adhere to the plain terms of the contract and construe it according to its plain meaning. *Id.* "However, because insurance companies typically draft their policies without the input of the insured, the companies bear the burden of making their contracts clear." *Id.* (internal citation and quotation omitted). If ambiguity exists, then the contract must be construed against the insurer. *Id.* "In determining whether the provisions are ambiguous, we give the words

6

employed their usual, ordinary, and popular meaning. An ambiguity, if one exists, must be found on the face of the policy, and courts must not strain to find ambiguities." *Id.* at 643–44 (internal citation and quotation omitted).

Additionally, in Virginia, a "condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Hammond v. Pac. Mut. Life Ins. Co.*, 159 F. Supp. 2d 249, 254 (E.D. Va. 2001) (internal citation and quotation omitted). Basically, "a condition precedent exists where the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs." *Id.* (internal citation and quotation omitted). The Virginia Supreme Court has held that provisions requiring the insured to act are reasonable contract terms that will be enforced. *Virginia Farm Bureau v. Etheridge*, 12 Va. Cir. 284 (1988). In this regard, provisions requiring notice about an accident in insurance contracts are valid and enforceable as conditions precedent to an auto insurance policy taking effect, "requiring substantial compliance, and no showing of prejudice is necessary." *Id.* Here, the insurance contract provides the following:

> Section IV – Business Auto Conditions
>     A. Loss Conditions
>         2. Duties In The Event Of Accident, Claim Or Loss Condition
>         We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>             a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>                 (1) How, when and where the "accident" or "loss" occurred;
>                 (2) The "insured's" name and address; and
>                 (3) To the extent possible, the names and addresses of any injured persons and witnesses . . .
>             . . .
>             c. If there is a "loss" to a covered "auto" or its equipment, you must also do the following, but only with respect to a Physical Damage claim:

7

> (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.
> (2) Do what is reasonably necessary to protect the covered "auto" from further damage. Also keep a record of your expenses for payment in the settlement claim.
> (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.
> (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

Pl.'s Compl. Ex. 1 at 36–37, 46.

The contract defines "accident" as a "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage' the 'insured' neither expected nor intended." *Id.* Ex. 1 at 61. The contract states that Plaintiff has "no duty to provide coverage under this policy unless there has been full compliance with the following duties." Pl.'s Compl. Ex. 1 at 36–37, 46. Providing prompt notice and protecting the vehicle from further damage are duties listed in the policy. However, the contract does not define "prompt," so looking at the plain meaning of the term: "being ready and quick to act; being on time; or done at once: given without delay."[4] Additionally, the contract does not define protect, so looking at the plain meaning of the term: "to cover or shield from exposure, injury, damage, or destruction."[5] Thus, providing prompt notice to Amalgamated and protecting the vehicle from further damage are conditions that must be satisfied before the contract becomes operative.

Here, it is undisputed that Ms. Eley sustained bodily injuries on August 8, 2022, requiring hospitalization. Ms. Eley informed Defendant about the accident around the said date, but Defendant failed to notify Plaintiff until September 23, 2022—approximately forty-six days after the accident. Forty-six days is not prompt but rather an undue delay in providing notice to Plaintiff.

---

[4] Prompt Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/prompt (last visited Apr. 10, 2024).
[5] Protect Definition & Meaning, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/protect (last visited Apr. 10, 2024).

8

Further, Plaintiff attempted to inspect the vehicle, however, the defective tire was missing. Defendant failed to preserve all four tires and protect the vehicle from further damage. Consequently, Defendant failed to comply with the terms of the contract by providing prompt notice and failing to protect the vehicle from further damage. The Complaint establishes a breach of the policy conditions and justifies Plaintiff's denial of coverage to Defendant. Accordingly, Plaintiff has no duty to provide insurance coverage to Defendant. Thus, the Court grants default judgment against Defendant and will award Plaintiff declaratory relief.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's Motion for Default Judgement is **GRANTED**. ECF Nos. 15, 16.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to the parties and all counsel of record.

**IT IS SO ORDERED.**

Newport News, Virginia
June 10, 2024

Raymond A. Jackson
United States District Judge